**John and Jane DOES 1–60, Plaintiffs,**

**v.**

**REPUBLIC HEALTH CORPORATION, a Delaware corporation; et al., Defendants.**

**No. CV–N–86–582–ECR.**

United States District Court, D. Nevada.

Aug. 28, 1987.

Jerome M. Polaha, Carter R. King, and Laurence W. McNabney, Reno, Nev., for plaintiffs.

M. Kristina Pickering, Lionel Sawyer & Colling, Reno, Nev., for defendants Republic Health Corp., Advanced Health Systems, Inc., Petrolane, Inc., R.E.P.H., Inc., R.E.P.H. Acquisition, James E. Buncher, and James W. McAtee.

David S. Richman, Wood, Lucksinger & Epstein, Los Angeles, Cal. and Gordon Cowan, Rogers and Shadek, Incline Village, Nev., for Michael D. Dunn.

Michael E. Tigar, Austin, Tex., for Advanced Health Systems, Inc., Republic Health Corp., Horizon Health Corp., R.E.P.H. Acquisition Co., LeRoy Pesch, James McAtee, and James Buncher and Petrolane Inc; (designated local counsel is M. Kristini Pickering).

## ORDER

EDWARD C. REED, Jr., Chief Judge.

## I INTRODUCTION

This lawsuit was initiated December 19, 1986, by sixty anonymous plaintiffs against Republic Health Corporation ("Republic"), Horizon Health Corporation ("Horizon"), Advanced Health Systems, Inc. ("AHS"), Petrolane Incorporated ("Petrolane"), R.E.

P.H., Inc., R.E.P.H. Acquisition, Leroy A. Pesch, James E. Buncher, James W. McAtee, Charles R. Miller, Michael D. Dunn, Jack Anderson, and unknown individuals, companies, and corporations. Subject matter jurisdiction is premised on 28 U.S.C. § 1331 (federal question) and § 1332 (diversity), as well as on principles of pendent and ancillary jurisdiction. Plaintiffs make ten claims for relief. The first four claims are based upon 18 U.S.C. § 1964(c), the section of the Racketeer Influenced and Corrupt Organizations Act ("RICO") which provides for civil remedies. In these claims, plaintiffs allege violations by defendants of 18 U.S.C. § 1962(a), (b), (c) and (d). Plaintiffs' other claims are based on state law: tortious breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, intentional infliction of emotional distress, fraud and deceit, and violations of the Nevada racketeering statutes.

Factually, the complaint includes allegations of five separate episodes.

The first episode, denominated the "Raleigh Hills Episode," concerns an alleged scheme to defraud Medicare, Medicaid, and other governmental entities by falsely inflating claims and by transferring patients between hospitals at different locations. This scheme is alleged to have taken place between 1980 and 1982. The alleged perpetrators were defendant Michael Dunn and unnamed officers, directors, employees, and attorneys of Petrolane and AHS. The alleged victims were the United States and the states where Raleigh Hills facilities were being operated.

The second episode, denominated the "American Medical International Episode," concerns an alleged scheme to fraudulently sell AHS to American Medical International. This scheme allegedly occurred in 1982 and 1983. The alleged perpetrators were a Clovis Wood and unnamed officers and directors of AHS and Petrolane. The alleged victim was American Medical International.

The third episode, denominated the "Horizon Health and Republic Health Episode," concerns alleged mail, wire, and securities fraud in the acquisition of AHS by Horizon and later by Republic. This fraud is alleged to have taken place in 1983 and 1984. The alleged perpetrators were Republic, Horizon, Anderson, McAtee, Buncher, Miller, Petrolane, AHS, and Clovis Wood. The alleged victims were public investors in Republic.

The fourth episode, denominated the "Republic 'Going Private' Episode," apparently concerns an alleged fraudulent scheme whereby Republic will transform from a public to a private corporation. This scheme is alleged to be presently ongoing. The alleged perpetrators are Pesch, Buncher, McAtee, R.E.P.H., Inc., and R.E.P.H. Acquisition. The alleged victims are unidentified "creditors" and "defrauded claimants" of Republic.

The fifth episode, the "Lifetime Care Insurance Episode," includes the facts central to the plaintiffs' complaint. It concerns the alleged breach by defendants of agreements entered by plaintiffs and defendants. The alleged victims are the plaintiffs. The fifth episode is the only episode in which direct injury to the plaintiffs is alleged. In the fifth episode the plaintiffs allege that they purchased lifetime care from defendants and that defendants have failed or will fail to provide such care. The plaintiffs allege that they were defrauded by the defendants. The plaintiffs charge that, in connection with the lifetime care contracts, the defendants committed mail fraud, wire fraud, interstate transportation of stolen property, extortion, embezzlement, false pretenses, violations of the Nevada insurance laws, and violations of the Nevada racketeering laws. All plaintiffs' claims for relief arise from the fifth alleged episode.

Three motions, filed by various defendants, are before the Court. The three motions raise overlapping issues, and are, therefore, analyzed together. The Court also will dispose of three motions for sanctions which are also related.

The first motion is the Motion of Defendant AHS to Strike and for a More Definite Statement or, in the Alternative, to Dismiss (docket # 17), filed by AHS on March 27, 1987. Plaintiffs filed an opposition to the

AHS motion on April 30, 1987 (docket # 33); the opposition included a motion for sanctions by plaintiffs. On June 5, 1987, AHS filed a reply (docket # 46). On July 6, 1987, AHS filed supplemental authorities in support of its motion (docket # 53). On July 22, 1987, plaintiffs filed a response to the supplemental authorities filed by AHS (docket # 54).

The second motion before the Court is the Motion of Additional Defendants to Dismiss or, in the Alternative, to Strike and for a More Definite Statement and Request for Rule 11 Sanctions (docket # 18), filed by defendants Republic, Horizon, Petrolane, R.E.P.H., Inc., R.E.P.H. Acquisition, Pesch Buncher, and McAtee ("Additional Defendants") on March 27, 1987. Plaintiffs filed an opposition to the Additional Defendants' motion on April 27, 1987 (docket # 27), and included therein a motion for sanctions. On June 5, 1987, the Additional Defendants replied (docket # 45). On June 11, 1987, the Additional Defendants filed errata to their reply (docket # 50). On July 6, 1987, the Additional Defendants filed supplemental authorities in support of their motion (docket # 53). The plaintiffs responded to the supplemental authorities on July 22, 1987 (docket # 54).

The third motion before the Court is the Motion by Defendant, Michael Dunn, to (1) Dismiss the Complaint or, in the Alternative, (2) Strike Portions of the Complaint and for a More Definite Statement (docket # 21), filed April 14, 1987. The motion of defendant Dunn is supported by points and authorities which incorporate, by reference, the points and authorities supporting the motions made by AHS and the Additional Defendants. In view of the nature of Dunn's points and authorities, the Court will treat the plaintiffs' oppositions to the motions of AHS and the Additional Defendants as oppositions to Dunn's motion. No reply was filed.

## II MOTIONS TO STRIKE

All movants seek to have the Court strike the allegations comprising episodes one through four from the plaintiffs' complaint. Episodes one through four are found at paragraphs 14–40 of the complaint.

Fed.R.Civ.P. 12(f) provides:

Upon motion made by a party before responding to a pleading ..., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

The movants argue that episodes one through four of the plaintiffs' complaint are immaterial, impertinent, and scandalous.

The movants argue that episodes one through four are immaterial and impertinent because the plaintiffs have no standing to assert the conduct alleged in those episodes. The movants argue that the plaintiffs were not harmed by the conduct of defendants there described even if plaintiffs' allegations are assumed to be true.

■ The Court recognizes that the conduct of the defendants alleged in episodes one through four of the complaint is not alleged to have injured the plaintiffs. This, however, is not fatal to the plaintiffs' ability to allege episodes one through four in this civil RICO case. A key element of plaintiffs' RICO claims is a pattern of racketeering activity. Plaintiffs apparently pled episodes one through four in an attempt to plead a pattern of racketeering activity. The authority is clear that in pleading and establishing a pattern of racketeering activity a civil RICO plaintiff is not limited to pleading and proving activity of the defendant which directly injured the plaintiff. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1469 (9th Cir.1987); *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 809–810 (7th Cir.1987).

The alleged activities of the defendants must be related, however, to constitute a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985) ("It is this factor of *continuity plus relationship* which combines to produce a pattern." *Quoting* S.Rep. No. 91–617, p. 158 (1969).) The Supreme Court has looked to 18 U.S.C. § 3575(e) in interpret-

ing RICO's pattern requirement: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id. See also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir.1986); *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191–94 (9th Cir. 1987); *Allington v. Carpenter*, 619 F.Supp. 474, 477–478 (C.D.Cal.1985) ("The relatedness of the predicate acts is established through proof of common perpetrators, common methods of commission, or common victims.").

█ In the case at hand, the activity of the defendants alleged in episode five of the complaint is unrelated to the activity alleged in the other episodes. The Lifetime Care Insurance Episode (episode five) involved an enterprise distinct from the enterprises involved in the other episodes. Episode five also involved different victims than did episodes one through four. Episode five is the only one of the alleged episodes in which the plaintiffs were directly victimized. Moreover, the methods used by the defendants in carrying out the alleged misconduct in episode five was different from the methods allegedly used by the perpetrators of the other episodes. Finally, the defendants' conduct in episode five does not show a purpose or result similar to those of episodes one through four. Episodes one through four are too unrelated to episode five to be part of a pattern of racketeering activity involving episode five.

Because episodes one through four do not constitute part of a pattern with episode five, the Court finds that those episodes are immaterial and impertinent.

The Court also finds that the allegations made in episodes one through four are scandalous. They reflect negatively upon the character of individuals and entities which are and are not parties to this suit.

Episodes one through four, paragraphs 14–40, shall be struck from the complaint. Moreover, the inclusion by plaintiff of similarly immaterial, impertinent, and scandal-

ous matter in any amended complaint filed with the Court would be improper.

## III SUBJECT MATTER JURISDICTION

Several defendants argue that the Court lacks subject matter jurisdiction.

█ The plaintiffs' complaint asserts subject matter jurisdiction based on both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity). The plaintiffs, however, have not pled their own citizenship. The Court, then, cannot take jurisdiction over this case based upon the diversity of citizenship of the parties.

█ This is, however, a case arising under the laws of the United States, to wit RICO, 18 U.S.C. § 1964. On this basis, the Court has subject matter jurisdiction over this case. *See* 28 U.S.C. § 1331.

The defendants argue that the plaintiffs' complaint is so inadequate as to deny the Court jurisdiction. The Court has reviewed the complaint carefully and finds that this argument is without merit. The plaintiffs' federal claims are not so insubstantial as to deny the Court federal question jurisdiction.

## IV R.E.P.H. ACQUISITION COMPANY

The plaintiffs have named as defendants R.E.P.H., Inc., and R.E.P.H. Acquisition.

The defendants have established that there is no entity related to the facts of this case called R.E.P.H., Inc. *See* Affidavit of Leroy A. Pesch, M.D., attached to Motion of Additional Defendants (docket # 18). The complaint must therefore be dismissed as against R.E.P.H., Inc.

The defendants have also established that, technically, no entity called R.E.P.H. Acquisition exists. *Id.* There is, however, an entity, which has been served, called R.E.P.H. Acquisition Company. *Id. See also* Return of Service upon "R.E.P.H. Acquisition" (docket # 14). Arguments in the motions that are before the Court have been made on behalf of R.E.P.H. Acquisition Company. The Court shall hereafter treat all references to R.E.P.H. Acquisition

as references to R.E.P.H. Acquisition Company.

## V PLAINTIFFS' PLEADINGS

The movant defendants all take the position that the plaintiffs have failed to state a claim based upon civil RICO and that, therefore, their complaint must be dismissed or, in the alternative, plaintiffs must amend or file a more definite statement.

To state claims under 18 U.S.C. § 1962 the plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. 18 U.S.C. § 1962. *See also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985); *Sun Savings and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987); *Miller v. Glen & Helen Aircraft, Inc.,* 777 F.2d 496, 498 (9th Cir.1985).

The defendants argue that the plaintiffs have failed to properly allege an enterprise and have failed to properly allege a pattern of racketeering activity. The Court disagrees.

To allege an enterprise, a plaintiff must allege "an ongoing organization, formal or informal" in which "the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). Further, the enterprise must be alleged to exist "separate and apart from the pattern of activity in which it engaged." *Id.*

■ Paragraph 42 of the complaint, part of episode five, states:

Plaintiffs are informed and believe, and thereon allege, that at all times relevant hereto, the Raleigh Hills Hospital at Sparks, Nevada was one of more than 19 Raleigh Hills hospitals which, since 1981 to the present time were and are now used by the Defendants named herein as an enterprise to conduct a pattern of racketeering activities. This enterprise was at all times engaged in interstate commerce.

A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Rae v. Union Bank,* 725 F.2d 478, 479 (9th Cir.1984). On a motion to dismiss, the Court takes as true the facts alleged. *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 834 (9th Cir.1980).

The plaintiffs have adequately pled an enterprise.

■ The Court also finds that the plaintiffs have sufficiently pled a pattern. The plaintiffs allege that the defendants defrauded sixty individuals. The sixty alleged frauds may constitute a pattern within the meaning of civil RICO. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceremics, Inc.,* 818 F.2d 1466, 1469 (9th Cir.1987) (The Court of Appeals held that, to constitute a pattern for purposes of civil RICO, the underlying illegal acts need not be part of different criminal episodes; the court specifically held that where it was alleged that a manufacturer of ceramic tile made multiple fraudulent sales to the plaintiff ceramic dealers, the complaint properly alleged a pattern.).

The defendants also contend that the plaintiffs have failed to plead with sufficient particularity the underlying criminal acts of the defendants. The defendants ground the argument on Fed.R.Civ.P. 9(b).

■ The Court finds that, under the relatively strict pleading requirements of Rule 9(b), the plaintiffs have not sufficiently pled the racketeering acts underlying their first, second, third, and fourth claims for relief.

The plaintiffs have conclusorily pled mail fraud, wire fraud, interstate transportation of stolen property, extortion, embezzlement, false pretenses, violations of the Nevada insurance laws, and racketeering in violation of the laws of Nevada.

The predicate acts which may constitute "racketeering activity" are set forth in 18 U.S.C. § 1961(1). That section does not include embezzlement, false pretenses, violation of state insurance laws or violation of state racketeering laws.

As to the plaintiffs' allegations of mail fraud, wire fraud, interstate transportation of stolen property, and extortion, the plaintiffs have failed to plead with sufficient particularity. As to these predicate acts the plaintiffs allege only that the "defendants" generally were the perpetrators; the plaintiffs do not allege the identity of the actual wrongdoers. Moreover, the plaintiffs have not provided times or places of the alleged criminal acts. Further, the plaintiffs have not sufficiently alleged the content of the misrepresentations that they allege were made. The plaintiffs' complaint does not allow proper responsive pleading by the defendants on the subject of the alleged predicate acts. *See Sun Savings and Loan*, at 195.

■ Also, in order to allege mail or wire fraud, the plaintiffs must allege that (1) the perpetrator knowingly participated in a scheme to defraud, (2) the perpetrator used or caused the use of the United States mails or wires for the purpose of carrying out the scheme, and (3) the perpetrator did so with the intent to defraud. *United States v. Green*, 745 F.2d 1205, (9th Cir. 1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *Allington v. Carpenter*, 619 F.Supp. 474, 477 (C.D.Cal. 1985). The plaintiffs have not pled these elements. On this basis, also, the complaint is inadequate.

Furthermore, as to claim one, the plaintiffs' pleading of a conspiracy is insufficient. *See Van Schaick v. Church of Scientology of California*, 535 F.Supp. 1125, 1140–1141 (D.Mass.1982). The conspiracy is alleged in general sweeping terms and does not apprise the defendants of the roles they are alleged to have played in the conspiracy.

The plaintiffs will be allowed time to amend their complaint to properly state a claim. In amending, the plaintiffs should refrain from including any impertinent, immaterial, and scandalous material. The plaintiffs should plead predicate acts with such particularity that the defendants, as individual entities or persons, are able to ascertain what misconduct the plaintiffs contend they are responsible for. Allega-

tions of fraud, especially, must be pled with particularity. Fed.R.Civ.P. 9(b). Also, a proper amended complaint would include allegations that clearly cover all elements of any predicate act asserted.

If the plaintiffs fail to file an amended complaint which complies with this Order within twenty days, the plaintiffs' RICO claims shall be dismissed. Such dismissal would result in the loss of pendent jurisdiction over, and the dismissal of, plaintiffs' state law claims.

## VI  PERSONAL  JURISDICTION/SERVICE

Defendants Republic, Horizon, R.E.P.H. Acquisition Company, Pesch, Buncher, McAtee, and Dunn take the position that the Court lacks personal jurisdiction over them.

The plaintiffs and defendants have submitted conflicting evidence concerning the extent to which various of the defendants have conducted business in Nevada. The Court, however, need not reach this question.

18 U.S.C. § 1965 provides:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

The purpose of this provision is to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. *Butcher's Union Local 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir.1986).

Nationwide service in RICO suits is not unlimited, however. "For nationwide service to be imposed under section 1965(b),

the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local 498,* 788 F.2d at 539. It is also necessary, for nationwide service of process, that the complaint state a claim under civil RICO and that the ends of justice require nationwide service. 18 U.S.C. § 1965(b).

▮ In this case it appears undisputed that there is at least one defendant over which the Court has personal jurisdiction and that there is no federal district in which the court would have personal jurisdiction over all the defendants. Therefore, if the plaintiffs succeed in amending their complaint to properly state a claim under civil RICO, section 1965(b) would allow nationwide service in this case. The Court finds that the ends of justice would require the allowance of nationwide service in this case if plaintiffs are able to amend their complaint to state a claim under RICO.

Defendants argue that the plaintiffs have not alleged a single nationwide conspiracy which would allow nationwide service under 18 U.S.C. § 1965(b). The Court disagrees. Episode five, when taken alone, fairly alleges a nationwide conspiracy. The allegations in episode five implicate individuals and entities with close connections to California, Nevada, Texas, and Delaware. Also, the network of Raleigh Hills hospitals, which is the enterprise alleged to have conducted a pattern of racketeering, is allegedly located in eleven states. The conspiracy alleged by plaintiffs is sufficiently nationwide to allow nationwide service under section 1965(b).

## VII DOE DEFENDANTS

The defendants argue that the fictitious parties defendant in this case should be dismissed.

"As a general rule, the use of a fictitious name to identify a defendant is not favored in the Ninth Circuit; however, it is permissible where the identity of the alleged defendant is not known at the time of the filing of the complaint. In such circumstances, the plaintiffs should be given an opportunity through discovery to identify the unknown defendant." *Swartz v. Gold Dust Casino, Inc.,* 91 F.R.D. 543, 546 (D.Nev.1981), *citing, Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980).

▮ In the case at hand, the plaintiffs' complaint refers to conspirators whose names appear to be unknown to the plaintiffs. Paragraph 43 of the plaintiffs' complaint is illustrative: "[C]ommencing sometime in 1980 or early 1981, the Defendant Dunn, the officers and directors of Petrolane; personnel in the legal department of Petrolane; the officers and directors of AHS; and others as yet unknown to these Plaintiffs, conspired, confederated, and agreed with one another...." In this case the plaintiffs' pleading of claims against unknown defendants is allowable.

## VIII SANCTIONS

Three motions for sanctions are pending.

▮ The first request for sanctions was made by the Additional Defendants in conjunction with their motion to dismiss, to strike, and for a more definite statement (docket # 18, filed March 27, 1987). This motion for sanctions is based on Fed.R. Civ.P. 11. The Additional Defendants argue that the complaint, as to them, is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. The Court finds that the plaintiffs' complaint, while not succinct or lucid, does not warrant sanctions. As discussed in prior sections, the main shortcomings of the complaint are its lack of specificity concerning alleged predicate acts underlying the civil RICO claims and the inclusion of impertinent, immaterial, and scandalous material. Plaintiffs will be allowed time to cure the lack of specificity. At this time the Court cannot conclude that the claims against the Additional Defendants are completely without legal grounds. Furthermore, at this stage, the Court cannot divine the sufficiency of the factual grounds for the complaint.

■ The second motion for sanctions pending in this case is made by plaintiffs in conjunction with their opposition to the Additional Defendants' motion to dismiss (docket # 27, filed April 27, 1987). The plaintiffs base their motion on Rule 11 and assert that the defendants concealed the alleged fact that defendants AHS, Horizon, and Republic carried on an advertising campaign in Nevada and the alleged fact that defendant Horizon is operating a hospital unit in Nevada. The Court cannot find that these are facts. While the plaintiffs have submitted convincing evidence that ties Horizon and Republic to advertising in Nevada, there exists a question of fact regarding whether these entities can be said to have carried on advertising or conducted business in Nevada. This factual issue has not been, and need not be, reached. The issue is close enough that sanctions should not be levied against defendants for their contesting it. Also, plaintiffs' belief that defendant Horizon is operating a hospital unit in Nevada appears mistaken; evidence submitted by plaintiffs themselves shows that the hospital unit is operated by Horizon Health Management Company and not by Horizon Health Corporation, the defendant in this case. Sanctions shall not be levied against defendants on the bases urged by plaintiffs in this motion.

Lastly, the third motion for sanctions was made by plaintiffs in conjunction with their opposition to the motion to dismiss of AHS (docket # 33, filed April 30, 1987). The plaintiffs assert as grounds for the motion for sanctions only the following:

The Defendants' Motion for Sanctions should be denied and the Plaintiffs' Motion for Sanctions should be granted on the grounds set forth in this memorandum.

The memorandum of points and authorities discusses the merits of the motion of AHS. The Court finds that the motion of AHS to strike, for a more definite statement, or to dismiss is not meritless and does not warrant Rule 11 sanctions.

## IX  ORDERS

IT IS, THEREFORE, HEREBY ORDERED that paragraphs 14–40 of the plaintiffs' complaint (docket # 1) are *STRICKEN.*

IT IS FURTHER ORDERED that the plaintiffs' complaint is *DISMISSED* as against defendant R.E.P.H., Inc.

IT IS FURTHER ORDERED that plaintiffs shall be allowed twenty (20) days to amend their complaint in compliance with the above discussion; if, within such time, the plaintiffs fail to so amend their complaint, their complaint shall be dismissed as against all defendants.

IT IS FURTHER ORDERED that the plaintiffs' motions for sanctions (docket # 27 and # 33) are *DENIED.*

IT IS FURTHER ORDERED that defendants' motion for sanctions (docket # 18) is *DENIED.*

IT IS FURTHER ORDERED that, to the extent not granted by the above orders, the motions dealt with in this order (docket # 17, # 18, and # 21) are *DENIED.*